APPENDIX A

In the Matter of Arthur Lawrence
RUSH, Debtor.

ASSOCIATES COMMERCIAL
CORPORATION, Plaintiff,

v.

Arthur Lawrence RUSH, Defendant.

Bankruptcy No. 81–02529–SW–13.
Adv. No. 81–1663–SW–13.

United States Bankruptcy Court,
W. D. Missouri,
Southwestern Division.

Dec. 3, 1981.

Spencer, Scott & Dwyer, Joplin, Mo., for plaintiff.

George Baldridge, Joplin, Mo., for defendant.

FINDINGS OF FACT, CONCLUSIONS OF LAW, AND FINAL JUDGMENT GRANTING PLAINTIFF'S COMPLAINT FOR RELIEF FROM THE AUTOMATIC STAY WITH RESPECT TO A 1974 FORD TRACTOR AND A 1979 C & P TRAILER

DENNIS J. STEWART, Bankruptcy Judge.

The plaintiff brought suit in this adversary action for relief from the automatic stay with respect to a 1974 Ford tractor, identification number R90VVT66194; and a 1979 C & P trailer, identification number BHW7975. From the outset, the defendant has offered no contest as to the validity and perfection of the security interest. Rather, the defendant's contention has been that he has an equity in the property or that it is necessary for his rehabilitation under the chapter 13 plan of arrangement or that the payments which he offers to make to the plaintiff under the plan of arrangement will adequately protect the plaintiff within the meaning of section 361 of the Bankruptcy Code.

■ The initial hearing in the action was held on October 16, 1981, in Joplin, Missouri. In that hearing, by virtue of admissible evidence of probative weight which was not contradicted by any other evidence, it was established that the balance due to the plaintiff as of October 16, 1981, was a principal balance of $17,404.29. The optimum retail value of the security which is the subject of this action is $17,446.00. On the basis of these facts, which, as noted above, have not been contradicted, it would be very difficult for this court to conclude that the debtor has any equity in the property. For postpetition interest is payable to a secured creditor when the value of the security exceeds to any extent the balance due to that creditor. See section 506(b) of the Bankruptcy Code. And it appears that any interest, whether to be figured at the contract rate or the legal rate, would eliminate any equity which could be claimed by the debtor in this collateral.

■ Alternatively, the debtor claims that the truck and trailer are necessary to his rehabilitation under the provisions of chapter 13 and therefore can lawfully be the subject of the automatic stay. "(W)here the debtor has an equity in the property or it is necessary to his performance under the plan and where the creditor's security will not be impaired by a stay, the creditor may be stayed from foreclosing on appropriate conditions to cure defaults and maintain payments on his claim to the extent that it is secured." 15 Collier on Bankruptcy, para. 13–401.01, p. 13–401–5 (1978). In this regard, the secured creditor has mounted a serious contention that the vehicle and trailer are not necessary to the debtor's rehabilitation. In pursuit of this contention, the plaintiff had been able, in the course of the hearing of October 16, 1981, to demonstrate that, at that juncture, the potential value of the tractor and trailer to the debtor's plan of rehabilitation was problematic; that, to date, the debtor had not used the vehicle and trailer in the commercial hauling operations which he proposed to use it to produce income under the plan; that he did not have figures or definite contracts, oral or written, upon which could be predicated any reasonably reliable prognosis as to the future income from these articles under the plan; and that, as of the time of the hearing of October 16, 1981, the

debtor had wholly failed to file his monthly operating reports with the court as required by the local rules of bankruptcy procedure. There can be little doubt that the debtor has the burden of proof on the issue of whether a secured item is necessary for his performance under a plan of arrangement. See section 362(g)(2) of the Bankruptcy Code. And, if the evidence which is described above had been the only evidence, it could in no way be concluded that the debtor had sufficiently borne this burden of proof. In this respect, however, the court noted that, apparently through some mistaken belief that the hearing had been concluded, the debtor had left the hearing of October 16, 1981, immediately after he had been called as a witness by the plaintiff. Therefore, to ensure that the debtor had a full and fair opportunity to present the facts which might sustain a finding that the security was necessary to his rehabilitation under the plan, the court entered its order on November 9, 1981, directing the debtor to show cause why the complaint for reclamation should not be granted. Fifteen days were granted in which to file a written response. In the show cause order, the court made the following observations:

"(T)he evidence adduced in the hearing of October 16, 1981, tends to show that the debtor has no equity in either the tractor or the trailer, and that his payments to the plaintiff are currently in arrears. It is not clear to the court from the papers before it precisely how the debtor proposes to cure this arrearage, and how soon.

"Nor does the evidence which has to date been heard demonstrate the necessity for use of the liened vehicles in the rehabilitation of the debtor. The debtor testified in the course of the hearing on October 16, 1981, that these vehicles had to date been utilized for farming operations rather than in the commercial hauling operations which were to be undertaken as a means of funding the plan of arrangement.

"And finally, in respect of the issue of feasibility of the debtor's plan of arrangement, currently before the court are the debtor's conclusionary projections about how much he can earn periodically in his commercial hauling operations. But these projections have only as much evidentiary weight as the facts and reason underlying them. Therefore, in order to demonstrate the feasibility of the plan of arrangement, the debtor must, by affidavit or otherwise, place before the court the facts which support his contention that his commercial hauling operations will yield sufficient income to defray his plan of arrangement."

Fifteen days subsequently elapsed without the debtor's filing any response to that order. At length, out of time, on November 27, 1981, counsel for the debtor filed an application to file an untimely response. In that application, he proposed to file a response on December 1, 1981. But the written response was in fact not filed until December 2, 1981.

In that response, the debtor proposes (1) to demonstrate that, in the months of October and November 1981, truck operations produced a total net income of $8,111.57 and that the truck and trailer which are the subject of this action accounted for $2,413.12 of that total; (2) to demonstrate that "the Debtor-Defendant will be able to pay to the Trustee, in addition to his regular payments of $2,500 per month a payment in the amount of $20,000.00 on December 15, 1981, from the proceeds of certain crops from his farm and from monies received from his parents"; and (3) to demonstrate that the plan is feasible because (a) an indebtedness in the sum of $59,000 to $60,000 has been now extinguished and (b) in addition to the monthly payments of $2,500 and the December payment of $20,000.00, another $20,000 payment will be made into the plan in the coming summer.

The initial $20,000 payment, however, was scheduled to be made in November 1981, a time that is now past. In respect of this, the debtor states in his response of December 2, 1981, that:

"the Debtor-Defendant had planned to make said payment to the Trustee during November, 1981, but the wet weather has

delayed the cutting and harvesting of the beans and getting them to market so that he can raise said money but he will be able to make said payment to the Trustee on or before December 15, 1981."

But, in order to demonstrate "adequate protection" within the meaning of the Bankruptcy Code, the debtor must demonstrate his ability to make regular payments according to the contract and a reasonable and reliable plan for curing the arrearages which are due to the plaintiff. The evidence to date is uncontradicted that the debtor has made no payments on the security since May 22, 1981. Thus, payments of $982.64 per month are now past due for a period approaching 7 months. In order to grant the plaintiff the equivalent of its claim (i.e., the value of its security) as of the effective date of the plan of arrangement, the debtor must either cure these arrearages forthwith or else pay interest at the contract or legal rate on the declining balance thereof. According to the unsupported monthly budget submitted by the debtor, there would ordinarily not be sufficient income on a regular basis to permit *regular* payments so as to accomplish this result. In this aspect of the plan, a secured creditor would be left to the uncertainties as to whether the debtor could actually make his two seasonal $20,000 payments as he proposes. A court, in determining whether a plan of arrangement offers a secured creditor the "*indubitable* equivalent" (emphasis added) of his claim cannot be assured that such indubitability will be attained on the record which is now before it in this case.

There can be little doubt that, because the chapter 13 provisions are limited to debtors who have a "regular income," it is contemplated that a debtor demonstrate to the chapter 13 court a reasonable probability of payment based upon regular receipts of money by the debtor. This fundamental principle must be held to apply with respect to the rights of a secured creditor under the plan and particularly with respect to a secured creditor whose arrearages are as large as those which are owed to the plaintiff in the action at bar. The court is unwarranted in further maintaining the effect of the automatic stay in the face of the uncertainties and delays which subsist in this case. To date, not even the feasibility of the plan as a whole can be shown because, in part, of the debtor's failure to file regular monthly operating statements. And, by virtue of an evidentiary opportunity granted on October 16, 1981, then supplemented by the show cause order of November 9, 1981, the facts upon which the court might have based a reliable projection of the regular income which would sustain the payments necessary to be made to the plaintiff could have been presented. Again, however, these opportunities were not availed. And the result is that the court is requested to maintain the stay in effect against a secured creditor whose security, particularly by reason of the vast amount of overdue arrearages, may be severely impaired and to do so on the basis of unsupported speculative projections about what type and magnitude of business will be done by the debtor in the future. This the court cannot, under the governing legal principles, do.

It is therefore, accordingly,

ADJUDGED that the plaintiff's complaint for relief from the automatic stay with respect to the above described vehicles be, and it is hereby, granted.